UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN RESEARCH CAPITAL LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>H NU PHOTONICS LLC, *et al.*,<br><br>　　　　　　Defendants. | Case No. C22-607-MLP<br><br>ORDER |

## I.　INTRODUCTION

This matter is before the Court on Plaintiff American Research Capital LLC's ("ARC") Motion for Summary Judgment. ("ARC's Motion"). (Pl.'s Mot. (dkt. # 57).) ARC seeks partial summary judgment on claims of breach of contract, breach of guaranty, and replevin arising from Defendants' H NU Photonics LLC ("Photonics"), H NU Solar LLC ("Solar"), and Hive Energy Systems LLC ("Hive") (collectively, "Defendants") default on the parties' financial agreements. (*Id.* at 1.) Defendants opposed ARC's Motion (Defs.' Resp. (dkt. # 59)), and ARC filed a reply (Pl.'s Reply (dkt. # 63)).[1] Neither party requested oral argument. Having considered

---

[1] Defendants' Response totals 27 pages and was filed in excess of this Court's page requirements without leave to file an overlength brief. *See* Local Civil Rule ("LCR") 7(e)(3), (6), (f). However, because

ORDER - 1

the parties' submissions, the balance of the record, and the governing law, ARC's Motion (dkt. # 57) is GRANTED, as explained further below.

## II. BACKGROUND

ARC is a Washington State limited liability company ("LLC") that provides capital to federal grant recipients, or companies performing federally sponsored research contracts, with such funds intended to serve as bridge loans while the business performs under the contract and receives grant funds. (Kummer Decl. (dkt. # 58) at ¶ 2.) Defendants are Delaware LLCs located in Maui, Hawaii, specializing in renewable energy, defense photonics, optics, and medical imaging technologies, and developing instruments and electronics for space imaging, remote sensing, agricultural use, biomedical use, and laser ranging and imaging. (O'Connell Decl. (dkt. # 60) at ¶¶ 4-6; Reiley Decl. (dkt. # 61) at ¶¶ 4-6.) Photonics, Solar, and Hive are owned and managed by Daniel O'Connell, who serves as CEO, and Michael Reiley, who serves as President of the entities.[2] (*Id.*) Photonics and Solar are recipients of Phase I or Phase II SBIR ("Small Business Innovation Research") and SBTT ("Small Business Technology Transfer") grants. (Kummer Decl. at ¶ 4; O'Connell Decl. at ¶¶ 9-12.)

On or about April 19, 2016, ARC and Photonics entered into a loan and security agreement (the "Loan Agreement") for its research, by which ARC initially made available to Photonics a line of credit of up to $1 million dollars. (Kummer Decl. at ¶¶ 7-8, Ex. 1 at 1-3, 23; O'Connell Decl. at ¶¶ 23-24.) The interest rate on any funds advanced to Photonics was 1.5% per

---

Defendants' excess submission does not impact the Court's determination in this case, Defendant's Response will be considered in total. Defendants' counsel is advised to comport with the Court's page requirements in future filings. The parties are further advised that the Court has recently amended its local civil rules from page count to word count since the parties' filings. *See* LCR 7(e).

[2] Although Mr. O'Connell is named as a defendant in this action, the sole count alleged against him is expressly excluded from ARC's Motion. (*See* Pl.'s Mot. at 1, 8.)

ORDER - 2

month, with the rate increasing to 2% per month in the event Photonics defaulted on the loan. (Kummer Decl. at ¶ 9, Ex. 1 at 23.) On that same date, ARC and Solar entered into a guaranty and security agreement ("Solar Guaranty") by which Solar guaranteed Photonics would comply with its obligations under the Loan Agreement, and agreed to make payments owed to ARC under the Loan Agreement if Photonics failed to. (*Id.* at ¶ 11, Ex. 1 at 3, Ex. 2; O'Connell Decl. at ¶ 24.)

As collateral for Photonics' obligations to ARC under the Loan Agreement, Photonics granted ARC security interests in its collateral as described in the Loan Agreement, including: "all [Photonics'] present and future Accounts, Chattel Paper, Goods (including Inventory and Equipment), Instruments, Investment Property, Documents, and General Intangibles, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts, and the proceeds thereof." (Kummer Decl. at ¶ 10, Ex. 1 at 2, 7.) As part of the Solar Guaranty, Solar also granted ARC a security interest in its collateral. (*Id.*, Ex. 2 at 1, 3.)

Relevant to ARC's claims in this matter, and pursuant to the Loan Agreement, Photonics also agreed to furnish to ARC:

> (a) Tax Returns. Copies of [Photonics'] Federal income tax returns, and any amendments thereto, within 10 days of the filing thereof with the Internal Revenue Services;
>
> (b) Aging[.] A detailed listing of [Photonics'] unpaid Grant Funds and Accounts, in such form as is acceptable to ARC, every month and whenever requested by ARC, certified by Photonics' chief financial officer as being complete and correct;
>
> (c) Financial Reports. As soon as available but not later than 45 days after the last day of each fiscal quarter, a [Photonics'] prepared balance sheet and income statement covering [Photonics'] operations for such quarter certified by [Photonics'] chief financial officer and such other information as [ARC] shall reasonably request.

(Kummer Decl., Ex. 1 at 10.) Photonics also agreed to permit ARC "to inspect, audit, make copies of, and make extracts" from Photonics' records as ARC may request. (*Id.*) The Loan Agreement provided that Photonics would be liable to ARC for costs and expenses, including any attorneys' fees ARC incurred with respect to enforcing the obligations owed under the Loan Agreement. (*Id.*, Ex. 1 at 17.)

From April 19, 2016, through March 9, 2020, the parties amended the Loan Agreement four times, ultimately extending Photonics a line of credit up to $3.5 million dollars. (Kummer Decl. ¶¶ 13-14, 16, 18, Exs. 3-5, 7; O'Connell Decl. at ¶¶ 25-28, 32, 56-57.) As a part of these amendments, and as a condition precedent to ARC's waiver of a prior default, Photonics' obligations under the Loan Agreement were additionally guaranteed by Hive under a guaranty and security agreement in October 2019 ("Hive Guaranty").[3] (Kummer Decl. at ¶¶ 16-17, Ex. 5 at 1-2, Ex. 6; O'Connell Decl. at ¶ 56.) As part of the Hive Guaranty, Hive granted ARC security interest in its collateral. (Kummer Decl., Ex. 6 at 1, 3.)

Photonics did not make any payments to ARC after April 30, 2018, nor reduce the principal balance to $3 million as required per the fourth amendment to the Loan Agreement by May 15, 2020. (*See* Kummer Decl. at ¶¶ 18-19, Ex. 14 at 1-3.) As a result, on April 9, 2021, ARC notified Photonics that it was in default of its obligations under the Loan Agreement, that ARC had terminated the Loan Agreement, and that the amounts due under the Loan Agreement were immediately due and payable. (*Id.* at ¶¶ 20-21, Ex. 8.) ARC noted it was aware Photonics was engaged with third parties to obtain "a capital infusion" to repay its obligations under the

---

[3] Though not subject to the instant motion, Mr. O'Connell also entered into a guaranty and security agreement in which he agreed that certain "Grant Funds" received by Photonics, or any other related party would be paid to ARC or deposited into a designated account, and that certain reports would be provided to ARC regarding the Grant Funds. (Am. Compl. (dkt. # 37) at ¶¶ 61-75; *id.*, Ex. F.)

ORDER - 4

1   Loan Agreement. (*Id.* at ¶ 21, Ex. 8 at 3-4.) ARC advised it would not take any action to collect
2   until April 30, 2021. (*Id.*) Though Defendants failed to obtain "a capital infusion" or make any
3   payments to ARC by April 30, 2021, ARC continued to work with Defendants to resolve the
4   default. (*Id.* at ¶ 22.)
5         On April 20, 2022, ARC again notified Photonics it was in default of its obligations
6   under the Loan Agreement and that it intended to file an action to collect. (Kummer Decl. at
7   ¶ 23, Ex. 9.) On May 5, 2022, ARC filed its initial complaint in this action, seeking to recover
8   the amounts owed by Photonics, to enforce the Solar, Hive, and O'Connell Guaranties, and
9   replevin of the entities' pledged collateral. (*See* Compl. (dkt. # 1).)
10        After filing suit, on August 11, 2022, ARC requested that Photonics and Solar comply
11  with their obligations to provide the financial information required by the Loan Agreement to
12  ARC. (Kummer Decl. ¶ 24, Ex. 10.) ARC represents both Photonics and Solar had previously
13  provided the required financial information up until the first quarter of 2022. (*Id.*) ARC
14  represents that, to date, Photonics and Solar have failed to produce the financial documents or
15  communicate any further on the subject. (*See id.* at ¶¶ 25-27, Exs. 11-12.)
16        Defendants counter that the terms of the Loan Agreement, and ARC's debt collection
17  activities, represent a form of predatory lending and/or illegal debt collection. (*See* Answer (dkt.
18  # 40) at 9-10, ¶ 2; *see generally* O'Connell Decl.; Reiley Decl.) Specifically, Mr. O'Connell and
19  Mr. Reiley state though they were not seeking supplemental funding at the time for Photonics'
20  research, ARC CEO Lucien Fouke directly solicited Photonics, and given ARC's representation
21  that it had "proven an important source of supplemental financing for entrepreneurial SBIR
22  recipients," both Mr. O'Connell and Mr. Reiley relied on ARC's history in evaluating whether to
23  do business with ARC. (O'Connell Decl. at ¶¶ 13-16; Reiley Decl. at ¶¶ 9-14.) Mr. O'Connell

ORDER - 5

and Mr. Reiley additionally recognized the Loan Agreement's 18% annual interest rate "seemed very high" but ARC represented this was because ARC was proposing an unsecured loan, was not taking an equity interest, and due to the increased risk to ARC on the loan. (O'Connell Decl. at ¶ 20; Reiley Decl. at ¶ 16.)

Both Mr. O'Connell and Mr. Reiley further state ARC later failed to help secure promised investors for Photonics or Solar, and that only after they executed the Loan Agreement did they learn Robert Kummer and Mr. Fouke were not investing their own funds at ARC. (O'Connell Decl. at ¶¶ 29-36; Reiley Decl. at ¶¶ 21-29.) Both acknowledge multiple instances in which Mr. Fouke acted angry and violent toward Mr. O'Connell. (O'Connell Decl. at ¶¶ 39-40; Reiley Decl. at ¶ 28.) Mr. O'Connell avers this behavior ultimately resulted in death threats to himself from Mr. Fouke, after previously requiring that he secure a life insurance policy naming Photonics as a beneficiary, and both represent ARC subsequently led a hostile takeover attempt to remove Mr. O'Connell from management. (O'Connell Decl. at ¶¶ 37, 41-57; Reiley Decl. at ¶¶ 30-39.) Mr. O'Connell and Mr. Reiley represent that a reduced interest rate was also routinely "dangled" to encourage their cooperation and that the third and fourth amendments to the Loan Agreement were done on a "take it or leave it" basis or else ARC would call the loan due and seek to seize Photonics and Solar. (O'Connell Decl. at ¶¶ 26, 55-57; Reiley Decl. at ¶¶ 37-39.)

Relevant to ARC's Motion, Defendants' affirmative defenses generally counter that ARC and its agents used a variety of unlawful tactics to induce Solar, Hive, and Mr. O'Connell to execute guaranties, including supporting an attempt by Photonics' former corporate controller to take financial control of Photonics and Solar unless Mr. O'Connell agreed to provide ARC with authority over Defendants' finances and bank accounts. (Answer at 9-10, ¶ 2.) Defendants allege ARC and its agents used threats and intimidation to induce Solar, Hive, and Mr. O'Connell to

ORDER - 6

execute guaranties and that ARC routinely interfered in Defendants' business efforts until they agreed to amended terms on the Loan Agreement and Guaranties. (*Id.* at 10-11, ¶ 2.) Defendants additionally allege the financial agreements are unenforceable because the terms and conditions imposed, or the methods used to induce the Guaranties, were unconscionable. (*Id.* at 11, ¶ 3.)

On December 15, 2022, ARC filed its Motion. (*See* Pl.'s Mot.) As of the filing of ARC's Motion, $6,681,526.95 was owed under the Loan Agreement not including any costs, expenses, and attorneys' fees. (Kummer Decl. at ¶¶ 29-30, Ex. 14.) This matter is now ripe for review.

### III.  DISCUSSION

In this case, there is no dispute amongst the parties as to Defendants' default on their loan obligations nor any genuine issue of material fact regarding Defendants' affirmative defenses as to the Loan Agreement obligations. As further explained below, ARC is entitled to judgment as a matter of law on the claims identified in its Motion and Defendants' affirmative defenses.

**A.  Summary Judgment Standard**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins.*

ORDER - 7

1  *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the

2  nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

3  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in

4  favor of the nonmoving party. *Id*. at 585-87.

5        Genuine disputes are those for which the evidence is such that a "reasonable jury could

6  return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's

7  responsibility to "identify with reasonable particularity the evidence that precludes summary

8  judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The

9  Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source

10 omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but

11 it may consider other materials in the record."). Nor can the nonmoving party "defeat summary

12 judgment with allegations in the complaint, or with unsupported conjecture or conclusory

13 statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see*

14 *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

15       **B.    ARC's Claims**

16       ARC has moved for summary judgment on seven of the nine claims asserted in its

17 amended complaint.[4] (*See* Pl.'s Mot.) Based on the record, the undisputed evidence demonstrates

18 the Loan Agreement between ARC and Photonics was breached given Photonics' failure to

19 reduce the loan balance below the Loan Agreement's allowable amount. (*See* Kummer Decl. at

20 ¶¶ 16, 18-19.) As of May 31, 2020, the loan balance remained in excess of $3.5 million despite

21 the Loan Agreement's requirement it be reduced to $3 million by that time. (*See id.* at ¶¶ 18-19,

22

23 [4] ARC also pleaded unjust enrichment in the alternative to its breach of contract claim against Photonics. (*See* Am. Compl. at ¶¶ 76-85.) As the Court finds that ARC is entitled to summary judgment on its breach of contract claim against Photonics, ARC's unjust enrichment claim is moot.

ORDER - 8

Ex 8.) Photonics has also failed to make any payments on its Loan Agreement obligations since 2018. (*See id.*, Ex. 14 at 1-3.)

Defendants do not contest the merits of ARC's breach of contract, breach of guaranty, or replevin claims, or any of ARC's sought remedies as a result of such claims. (*See* Defs.' Resp.) Defendants instead contend their affirmative defenses render any obligations to ARC unenforceable or incompletely enforceable. (*Id.* at 3 ("Defendants do not dispute that they have an obligation to reimburse ARC.".) Consequently, there is no genuine dispute that ARC is entitled to summary judgment on the subject claims, and its requested remedies, absent resolution of Defendants' affirmative defenses in their favor.

**C.   Defendants' Affirmative Defenses**

Defendants' Answer set forth four affirmative defenses: (1) accord and satisfaction; (2) duress/oppression; (3) unconscionability; and (4) Fair Debt Collection Practices.[5] (*See* Answer at 9-12, ¶¶ 1-4.)

Defendants' opposition additionally argues fraudulent inducement and constructive fraud. (*See* Defs.' Resp. at 23-25.) But neither defense was pleaded in this case. (*See* Answer at 9-12, ¶¶ 1-4.) The Ninth Circuit allows for a new affirmative defense to be raised on summary judgment absent prejudice to the plaintiff. *See e.g.*, *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997) (citation omitted) ("Although Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff an affirmative defense may be plead[ed] for the first time in a motion for summary judgment."); *see also Kische USA LLC v. Simsek*, 2017 WL 3895545, at *8 n.10 (W.D. Wash. Sept. 6, 2017).

---

[5] As noted above, ARC did not seek summary judgment on its claim of breach of guaranty by Mr. O'Connell. (*See* Am. Compl. at ¶¶ 61-75; Pl.'s Mot. at 1, 8.) Mr. O'Connell's affirmative defense, premised on Fair Debt Collection Practices, is thus not subject to ARC's Motion. (*See* Answer at 11-12, ¶ 4.)

ORDER - 9

1   Here, ARC would be prejudiced by Defendants' tardy assertion of fraud defenses. ARC
2   did not have notice that Defendants intended to assert fraud defenses to its claims, and therefore,
3   did not have any opportunity to conduct discovery on such defenses. *See, e.g.*, *United States v.*
4   *King Mountain Tobacco Co., Inc.*, 2014 WL 4264803, at *6 (E.D. Wash. Aug. 28, 2014)
5   (denying affirmative defense raised on summary judgment where plaintiff was prejudiced by not
6   having an opportunity to conduct discovery). Fraud must also be pleaded with particularity
7   pursuant to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.[6] Defendants'
8   omission of the fraud defenses in their Answer, and submission in opposition to ARC's Motion,
9   plainly fails to satisfy such requirements. (*See* Answer at 9-12, ¶¶ 1-4; Defs.' Resp. at 23-25.)
10  Moreover, Defendants do not address their failure to raise fraud as an affirmative defense, nor
11  argue why ARC would not be prejudiced by their assertion for the first time at summary
12  judgment.

13  Consequently, only Defendants' properly pleaded affirmative defenses will be examined:

14          i.      *Accord & Satisfaction and Duress/Oppression*

15  Defendants set forth accord and satisfaction and duress/oppression as their first and
16  second affirmative defenses. (*See* Answer at 9-11, ¶¶ 1-2; Defs.' Resp at 19.) However, both
17  defenses were baldly asserted in Defendants' Response without any specific argument as to how
18  accord and satisfaction, or duress/oppression, operate to nullify Defendants' obligations on the
19  Loan Agreement. (*See* Defs.' Resp. at 19 ("The facts set forth above . . . support Defendants'
20  affirmative defenses set forth in its Answer, including accord and satisfaction (in part, based on
21  payments made), [and] oppression/duress generally . . . .").) The Court need not consider bare

---

[6] This generally requires allegations "specific enough to give defendants notice of the particular misconduct . . . [and] must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotations omitted).

allegations "unsupported by citations to the record or legal authority." *Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 F. App'x 569, 571 n.2 (9th Cir. 2009); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court . . . We require contentions to be accompanied by reasons."). Defendants' first and second affirmative defenses therefore do not preclude summary judgment in ARC's favor.

                ii.        *Unconscionability*

Defendants argue the Loan Agreement, amendments, and Guaranties should be deemed unenforceable on the basis of procedural and substantive unconscionability. (Defs.' Resp. at 19-23.) Under Washington law, whether a contract is unconscionable is a question of law.[7] *Nelson v. McGoldrick,* 127 Wn.2d 124, 131 (1995). Washington courts recognize two forms of unconscionability: "(1) substantive unconscionability, involving those cases where a clause or term in the contract is alleged to be one-sided or overly harsh[;] and (2) procedural unconscionability, relating to impropriety during the process of forming a contract." *Id.* (citation and internal quotations omitted). The burden of demonstrating a contract is unconscionable lies with the party attacking it. *See Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898 (Wash. Ct. App. 2001).

As an initial evidentiary matter, the email exhibit evidence submitted with Mr. O'Connell's and Mr. Reiley's declarations, and cited to in Defendants' Response concerning the unconscionability affirmative defense, was not provided to ARC in discovery. Defendants' failure to provide this evidence in discovery is fairly egregious in light of the procedural background of this case.

---

[7] The Loan Agreement, Solar Guaranty, and Hive Guaranty each specify that Washington law applies. (Kummer Decl., Ex. 1 at 2, 20; *id.*, Ex. 2 at 1, 9; *id.*, Ex. 6 at 1, 9.)

In short, ARC previously brought a motion to compel based on Defendants' failure to provide *any* documents or production in discovery. (Dkt. # 41.) After a hearing, this Court granted ARC's motion, required production from Defendants, and set a status hearing to assure compliance. (Dkt. # 51.) As a result, Defendants produced 513 documents to ARC, which ultimately comprised only tax returns and various financial statements. (*See* Mackey Decl. (dkt. # 64), Ex. 1.) Defendants then represented to ARC that they would not seek to proceed on any other evidence with regard to their claims or defenses outside of the provided tax returns and financial statements. (*Id.*) Based on this representation, the parties notified the Court that the scheduled status hearing was not necessary, and it was stricken. (Dkt. # 56.)

"If a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As such, Rule 37(c)(1) provides that Defendants' email evidence need not be considered by the Court and—in light of the background of this case—such exclusion here remains appropriate. *See, e.g.*, *Dawson v. Genesis Credit Mgmt., LLC*, 2017 WL 5668073, at *1-2 (W.D. Wash. Nov. 27, 2017) (striking document relied on in opposition to motion for summary judgment under Fed. R. Civ. P. 37(c)(1) because it was "improperly withheld in discovery"). Defendants have also not addressed their failure to provide the email documents to ARC, whether such failure was substantially justified or harmless, or otherwise acknowledged any evidentiary issues concerning the email documents. (*See* Defs.' Resp.)

In addition, Defendants' counsel has also submitted a declaration, which contains an Accurint business report for ARC, ARC's UCC filings, and links to various news articles and websites, all identifying ARC members outside of Mr. Kummer and Mr. Fouke. (*See* Bain Decl. (dkt. # 62).) However, this evidence is relied on by Defendants only with regard to the fraudulent

ORDER - 12

inducement defense (*see* Defs.' Resp. at 25 n.103), and not Defendants' unconscionability defense. In any case, the record evinces that the course of Defendants' dealings with ARC were solely through Mr. Kummer and Mr. Fouke, and no other ARC member. (*See* O'Connell Decl. at ¶¶ 13-19, 23, 25, 29-32, 34-36, 44, 46, 48-49, 52-55, 59, 62; Reiley Decl. at ¶¶ 12-16, 21, 23-25, 26, 28-31, 33-36.)

Defendants' unconscionability affirmative defenses will therefore be examined with consideration of only Mr. O'Connell's and Mr. Reiley's declarations.

1. Procedural Unconscionability

Procedural unconscionability relates "to impropriety during the process of forming a contract." *Nelson*, 127 Wn.2d at 131. It involves "blatant unfairness in the bargaining process and a lack of meaningful choice." *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 518 (2009). To determine procedural unconscionability, the Court looks to the totality of the circumstances, including: "(1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were hidden in a maze of fine print." *Id.* at 518-19 (citation and internal quotations omitted).

Defendants argue the Loan Agreement was procedurally unconscionable because the secured nature of the Loan Agreement was not disclosed and instead affirmatively denied. (Defs.' Resp. at 20-21.) Defendants additionally argue Photonics was deprived of a reasonable opportunity to understand the terms of the contracts, and that ARC exerted superior bargaining power, due to Mr. Kummer and Mr. Fouke's representations that: (1) the interest rate on the Loan Agreement was high due to the loan being unsecured; (2) ARC had prior experience lending; (3) they were investing their own funds and had final decision-making authority at

ORDER - 13

ARC; (4) they would introduce Mr. O'Connell to their investor network; and (5) ARC would eventually reduce the interest rate while later requiring loan modifications that did not contain such terms. (*Id.* at 21-22.) Defendants further contend that ARC's requirement that Mr. O'Connell secure a life insurance policy benefitting Photonics, followed by subsequent threats on his life, are indicative of unequal bargaining power and lack of meaningful choice. (*Id.*)

Here, the Loan Agreement, amendments, and Guaranties were clearly bargained for between ARC and Defendants across a series of transactions over a four-year period (*see* Kummer Decl. at ¶¶ 7, 11, 13-14, 16-18, Exs. 1-7), and Defendants otherwise fail to establish that there were any issues with the "manner in which the parties entered into the contract[s]." *Torgerson*, 166 Wn.2d at 518. The terms of the Loan Agreement, amendments, and Guaranties were plain and clear. Despite Defendants' repeated assertions they were unaware they had granted security interests to ARC, and that such terms were hidden or undisclosed, the Loan Agreement itself was clearly titled "LOAN AND SECURITY AGREEMENT." (*See* Kummer Decl., Ex. 1 at 1.) A grant of a security interest was also conspicuously contemplated by both the terms of the Loan Agreement and the Solar and Hive Guaranties signed by Mr. O'Connell (*id.*, Ex. 1 at 2, 7; *id.*, Ex. 2 at 1, 3; *id.*, Ex. 6 at 1, 3). *See, e.g., Bonjorni v. Wells Fargo Bank, N.A.*, 2012 WL 836381, at *5 (W.D. Wash. Mar. 9, 2012) (rejecting procedural unconscionability challenge where "the critical terms of the contract . . . were disclosed in such a way that the average borrower could not miss them if he read the contract.").

Defendants also fail to establish the relevance of the remainder of their allegations regarding ARC, Mr. Kummer, and Mr. Fouke as to any unfairness in the bargaining process or lack of meaningful choice. ARC's lending experience, the source of ARC's funds, and the parties' undocumented promises and interactions across the course of their financial

ORDER - 14

arrangement, though clearly acrimonious at times given Mr. O'Connell's allegations, fail to clearly bear on whether Defendants were denied a reasonable opportunity to understand the import of the terms contained in the Loan Agreement, the amendments, or the Guaranties. In fact, Defendants fail to present any extrinsic evidence contemporaneously suggesting Defendants did not have a reasonable opportunity across this period of time to understand the Loan Agreement, its subsequent amendments, or the Guaranties before their execution. *See, e.g., Spearman Corp. Marysville Div. v. Boeing Co.*, 2022 WL 2805622, at *4 (W.D. Wash. July 18, 2022) (finding contracts not procedurally unconscionable where party challenging "failed to present any evidence to suggest it did not have a reasonable opportunity to understand the terms of the contracts"). Furthermore, any imbalance in bargaining power between Defendants and ARC alone given the terms of the agreements entered into is insufficient to show procedural unconscionability. *See id.* (citing *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 306 (2004)).

All in all, on this record, Defendants fail to establish blatant unfairness in the bargaining process or that they lacked a meaningful choice as to whether to enter into the Loan Agreement, and subsequent financial agreements, with ARC.

2. Substantive Unconscionability

Substantive unconscionability involves cases "where a clause or term in the contract is alleged to be one-sided or overly harsh." *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1177 (W.D. Wash. 2002) (citing *Nelson*, 127 Wn.2d at 131). "'Shocking to the conscience,' 'monstrously harsh' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.* (quoting *Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention*, 16 Wn. App. 439, 444 (Wash. Ct. App. 1976)).

Defendants argue the Loan Agreement was substantively unconscionable because ARC now seeks seizure of Defendants' assets and because Solar and Hive received no benefit from their warrants in the Guaranties permitting ARC to purchase shares of Solar and Hive. (Defs.' Resp. at 23.) Defendants further argue that the interest rate charged during the COVID-19 pandemic was exorbitant during a period where other interest rates were much lower. (*Id.*)

First, as addressed above, the parties' bargain clearly contemplated that ARC could seize Defendants' assets in the event of a default as the parties' agreements granted a security interest in Defendants' collateral. (*See* Kummer Decl., Ex. 1 at 2, 7; *id.*, Ex. 2 at 1, 3; *id.*, Ex. 6 at 1, 3.) The effect of such terms is not overly harsh, but instead, a rather common occurrence in the event of default on a contract where a security interest in collateral has been granted.

Defendants also fail to establish how either of the share buying provisions in the Solar and Hive Guaranties are one-sided or overly harsh for lack of consideration. A "guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of any nonperformance by such other, the latter being bound to perform primarily." *Robey v. Walton Lumber Co.*, 17 Wn.2d 242, 255 (1943) (internal quotations and citation omitted); *see also BP W. Coast Prods., LLC v. Shalabi*, 2013 WL 4039380, at *4 (W.D. Wash. Aug. 6, 2013). A guaranty may nominate the consideration for which it is given by its own terms. *Shalabi*, 2013 WL 4039380 at *4 (citing *F.C. Palmer & Co. v. Chaffee*, 129 Wn. 408, 412, (1924)).

The Solar Guaranty was executed at the same time Photonics and ARC entered into the Loan Agreement to induce ARC to extend credit to Photonics. (*See id.*, Ex. 2 at 1 ("FOR GOOD AND VALUABLE CONSIDERATION, and to induce [ARC] to extend financial accommodations to [Photonics], [Solar] agrees as follows . . . .") As such, no other consideration

ORDER - 16

was required for Solar's agreement to allow ARC to purchase shares because it explicitly contemplates the consideration it is supported by, *see Shalabi*, 2013 WL 4039380 at *4-5, and Solar's agreement to guarantee Photonics' obligations was made "as a part of the transaction which created the principal debt." *See Gelco IVM Leasing Co. v. Alger*, 6 Wn. App. 519, 522 (Wash. Ct. App. 1972). Similarly, the Hive Guaranty was later executed to extend Defendants' additional access to credit as part of the parties' third amendment to the Loan Agreement wherein ARC extended an additional $1 million in credit to Photonics. (*See id.*, Ex. 6 at 1 ("FOR GOOD AND VALUABLE CONSIDERATION, and to induce [ARC] to extend financial accommodations to [Photonics], [Hive] agrees as follows . . . ."). The Hive Guaranty provided Photonics the financial benefit of additional access to credit while also explicitly setting forth the consideration it is supported by. *See Shalabi*, 2013 WL 4039380 at *4-5.

      Finally, though Defendants now take exception to the interest rate charged after default on the Loan Agreement during the COVID-19 pandemic—as it has now resulted in an amount owed larger than initially borrowed—Defendants' argument does not address how the interest rate provided for by the parties' Loan Agreement itself was substantively unconscionable. Defendants fail to set forth any evidence demonstrating the interest rate provided for by the Loan Agreement was an overly harsh or a shocking amount for the nature of the loan provided. Nevertheless, the 1.5% monthly compound interest rate, totaling nearly 18% annually, was also clearly and conspicuously stated in the initial Loan Agreement (*see* Kummer Decl., Ex. 1 at 23), and despite Defendants' current grievances with the effect of compound interest, Defendants ultimately chose to borrow from ARC at this rate rather than pursue some other financing arrangement.

ORDER - 17

In conclusion, ARC has demonstrated that Defendants have defaulted on their financial obligations, and that Defendants' affirmative defenses fail to demonstrate that their loan obligations to ARC were otherwise unenforceable. As to remedy, ARC has requested: (1) $6,681,526.95 in damages on the claims subject to ARC's Motion; (2) an opportunity to submit evidence of its attorneys' fees and costs; (3) an award of possession of Photonics', Solar's, and Hive's collateral as identified in the Loan Agreement and Guaranties; and (4) that per the Loan Agreement, a consulting, turnaround, or similar firm of ARC's choosing take day-to-day operational and administrative control over Photonics at Photonics' cost, with Photonics' cooperation. (*See* Pl.'s Mot. at 8, 21.) As previously noted, Defendants have not objected to nor contested the propriety of ARC's proposed remedies. (*See* Defs.' Resp; *see also* Pl.'s Reply at 1, 3.)

Accordingly, the Court grants summary judgment in favor of ARC on each of the claims identified in ARC's Motion and grants ARC's sought remedies.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that:

(1)   ARC's Motion (dkt. # 57) is GRANTED. ARC is awarded damages in the amount of $6,681,526.95 on the claims subject to ARC's Motion;

(2)   ARC is entitled to possession of Photonics, Solar, and Hive's "Collateral" as defined in § 1.1.15 of the Loan Agreement (Kummer Decl., Ex. 1 at 2), and § 1.5 and § 5.1 of the Solar and Hive Guaranties (Kummer Decl., Ex. 2 at 1, 3; *id.*, Ex. 6 at 1, 3);

(3)   A consulting, turnaround, or similar firm of ARC's choosing shall take day-to-day operational and administrative control over Photonics at Photonics' cost, pursuant to § 13.1.6 of

the Loan Agreement (Kummer Decl., Ex. 1 at 15). Photonics shall cooperate with such firm in carrying out services pursuant to § 13.1.6 of the Loan Agreement; and

(4) The Clerk is directed to send a copy of this Order to the parties.

Dated this 3rd day of February, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 19